(No. 3232—

MARIE GEMELLI, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed August 16, 1939.*

*Rehearing denied October 10, 1939.*

IRVING M. GREENFIELD, for claimant.

JOHN E. CASSIDY, Attorney General; MURRAY F. MILNE, Assistant Attorney General, for respondent.

102

MR. JUSTICE YANTIS delivered the opinion of the court:

Mrs. Marie Gemelli filed her complaint herein on March 23, 1938 and thereby seeks an award under the provisions of the Illinois Workmen's Compensation Act for disability alleged to have resulted from alleged injuries sustained during the course of her employment at the Illinois Research and Educational Hospital, Chicago, Illinois. In claimant's statement, brief and argument she contends for an award for permanent total disability. The record discloses that on the 27th day of October, 1937 claimant was in the employ of respondent as a housekeeper's helper at the Research and Educational Hospital, a charitable institution maintained and operated by respondent at 1819 Polk Street, Chicago. Claimant entered such employment on September 23, 1937 and on October 27, 1937 was receiving a salary of $64.50, being $52.50 plus $12.00 cash allowance in lieu of maintenance. Other employees in the same capacity received the same salary for the first six months of employment and an increase of $2.50 per month for the second six months of their employment. Her duties consisted of scrubbing, mopping floors and general cleaning. On the afternoon of October 27, 1937 while attempting to remove a steel scrubbing tank full of water from the elevator, one of the wheels of the tank passed over her right foot and she let go of the elevator door and the latter struck her on the left side somewhat below the breast. No one else was present and the only information of what happened is claimant's statement. She reported the accident to her immediate superior and later in the afternoon complained to the housekeeper that she had a "funny pain" over

her left breast. Claimant continued to complain of her discomfort and was permitted to perform lighter work until November 1, 1937 when she was hospitalized at the institution. On November 23rd the patient returned to her home. She worked thirty-one days in December and twenty-nine days in January. On January 29, 1938 about 2:30 P. M. she complained to the assistant superintendent nurse, Miss Radek, that "her strained heart" was again troubling her. At that time she was staggering and gasping for air and complaining of sharp pain in the cardiac region. She was again admitted to the hospital that day for treatment with a diagnosis of psychoneurosis. She was considerably agitated mentally, but sat upright in bed, and except for shallow respirations, was apparently not in great distress. She complained of feeling chilly, but there was no rise of temperature at the time. A spot over the fourth rib when pressed seemed to elicitate sharp pain which radiated up the sternum and, as the patient claimed, choked her. According to the medical examination the pain seemed superficial, not deep and no definite pathology was apparent. A Departmental Report, filed April 19, 1938, from the Department of Public Welfare, and appearing in the record, shows that on January 31st claimant's son-in-law informed the attending nurse that the patient had had pains of this character before her admission to the hospital.

On February 5, 1938, claimant again had a spell in which she asked for a chair, gasped for breath and complained of pain, but rapidly recovered. X-rays were taken on February 4th and February 15th and an examination showed no pathology. Claimant gave her age at the time of the accident as forty-two (42) years. She did not work any for respondent during February, 1938, and in her complaint, filed March 23, 1938, stated that she was still disabled at that time from pursuing any manual labor. She received full pay for the thirty-one days in February, 1938. The medical attention and hospital service received by her up to February 26, 1938, was furnished by the State of Illinois.

Claimant contends, and her counsel argues, that prior to the alleged accident on October 27, 1937, she had always been in good health (p. 1, Respondent's Statement); that prior thereto she had never experienced any sensation of ill-being in connection with performing her work; had never had any trouble with her work, and was never sick or tired. That with-

in an hour or two after the alleged accident on October 27, 1937, she had a funny pain under her left breast which she had never had before; "that it is just like a pressure and the pain catches her; that a certain way she would move it would cut off her breath." Claimant testified at the first hearing on June 8, 1938, that: "If I sit up I get purple and cold, my left arm gets cold and my mouth and nose get icy, my hand turns cold and I get out of breath. I never had a feeling like that before October 27th * * * My nose, under the eyes and about the lips and chin gets awful cold and purple when that pain gets awful bad * * *. I never had a heart attack prior to the time I worked at the hospital." These statements are refuted by later evidence, to which reference will hereafter be made.

Claimant was examined by various medical men, whose testimony appears in the record. This included Dr. Nathaniel H. Adams, a witness for claimant, who examined her on July 6, 1938, and Dr. Paul L. Schroeder, a witness for respondent, who examined her on July 8, 1938, and Dr. Abraham A. Low, called by respondent, who examined her on July 12th and 13th, 1938; also Dr. Ford K. Hick, for respondent, who examined her on October 20, 1938. The testimony of these gentlemen was that they found she had a tendency to become fatigued, had somewhat low blood pressue, and that a point in the neighborhood of the left fifth rib was apparently sensitive to pressure, with a condition of cardiac neurosis with the following symptoms: Weakness and great fatigue, shortness of breath on exertion with a tendency to palpitation or rapid heart action after exertion, pain about the heart, and a tender point somewhere in the left chest.

Following the testimony of the above witnesses, a further hearing was held on April 25, 1939, in open court, Justices C. N. Hollerich and Aubrey L. Yantis presiding, at which time photostatic copies of records of the Cook County Hospital, Chicago, Illinois, concerning the claimant, Marie Gemelli, were admitted in evidence and the following witnesses were examined, i.e.: Dr. Frederick Tice, Dr. Maurice Adelman and Dr. Samuel G. Taylor, all called by respondent, and Dr. Frederick C. Test and Marie Gemelli, witnesses called by claimant.

The testimony of these medical men and the records of the Cook County Hospital, dated August 29, 1932, January 9, 1933, and January 30, 1933, being Respondent's Exhibits

A, B, and C, disclose the following: That Marie Gemelli, claimant herein, was admitted to the Cook County Hospital on August 27, 1932; that at that time she had a tumor in her neck. She then complained of weakness and had lost forty-eight (48) pounds in five weeks about a year prior to said date, when she had blood poisoning from running a rusty nail in her foot. She had gained back this weight in the succeeding six months, but had been feeling weak thereafter. She had lost twenty-four (24) pounds since June, 1932, and had had frequent attacks of nausea. She complained of pain in the epigastrium the following evening. She further stated at that time that she had had headaches associated with nausea all her life. She had frequent cold flashes. She had a smothering feeling in the chest associated with a fluttering of the heart; also a slight pitting of legs and became black and blue easily.

The hospital record further disclosed: That she had had an appendectomy seventeen years previously and an operation on the female organs in 1926; also that she had had typhoid fever when she was sixteen years of age. She was seen by Dr. Samuel G. Taylor of the hospital staff and remained in the hospital for two days and was again readmitted on January 4, 1933.

The record discloses further that from a history given by her at that time she suffered pain which was knifelike at times with pressure along the sternum which had been of one year duration; that she had a tired feeling and was sleepy all the time and was subject to fainting spells; that during these spells she could hear well, but could not respond; further, that for about a year she had had a tingling in the arms, legs and neck; that at times she had attacks when she was unable to walk and that these had occurred about twelve times during the preceding year.

The record further discloses (Respondent's Exhibit B) that the patient at that time stated she was well until about 1931, when she ran a nail in her foot; that this was followed by blood poisoning and lockjaw, and that she has not been well since; that when the fainting spells would attack her she would have to be supported or she would fall; that her legs, arms and neck stiffen and she could not open her eyes until consciousness is restored by use of ammonia and massage. The record discloses further that the pain complained of in

her chest at that time traveled up and down the sternum from the fourth rib to her navel. She was subject to headaches and drowsiness.

It also appears from claimant's history, as given to the hospital authorities at that time that: In 1915 claimant swallowed a bone, was rushed to a hospital and, according to her statement, "the bone was pushed down, and since then she has been having discomfort ranging from an empty feeling to a feeling of fullness with accompanying pain in varying degrees." When she was eight years of age she had a hemiplegia and a facial paralysis. At the time of the 1932-33 hospitalization she had a semi-hard tumor about the size of a plum over the lower portion of the larynx. The diagnosis showed a slight grade mitral heart leak. The patient's mental reaction at that time showed typical signs of psychoneurosis. She remained in the hospital for five days, during which time she seemed to rest well and she was discharged on January 9, 1933.

She was again readmitted to the hospital on January 13, 1933. The record at that time discloses that she had left the hospital against the doctor's advice on the occasion of her hospitalization in August, 1932. She was diagnosed this time as having a cyst in her neck and also as being a psychoneurotic. The operation for the removal of the tumor was performed and the record showed that on January 30, 1933, the stitches were removed and healing was proceeding properly, and the patient was discharged.

Mrs. Gemelli testified that in 1935 she was confined to the Swedish Covenant Hospital because of blood poisoning in her foot, and that prior to the alleged injury of October 27, 1937, she was "dizzy lots of times," and although denying the verity of certain statements appearing in the Cook County Hospital Reports above referred to, she admitted having given a history of her case to the doctors, and verified many of the statements appearing in those records. Both Dr. Nathaniel H. Adams and Dr. Frederick C. Test, called as witnesses for claimant, testified that they had made examinations of claimant prior to testifying, and in answer to hypothetical questions stated that in their opinion the accident alleged to have been sustained by claimant on October 27, 1937, had a direct causal effect on her subsequent state of ill-being, and that the objective findings made by them in the course of their

examination were sufficient to account for the sensations of ill-being experienced by claimant. This conclusion is not agreed to by the medical testimony produced by respondent. Dr. Paul L. Schroeder examined claimant on July 8, 1938, and testified that he found her to be a well nourished, obese, well developed person who was not very well physically, but that the stress or difficulty under which he found she was laboring was not related to the symptoms and signs found in his examination; that she was ill and not able to work at the time of his examination, but that such inability to work was not related to the conditions which the alleged accident was purported to have caused; that her condition was one of fatigue and being "rundown," and generally troubled about the problems of her family.

Dr. A. A. Low, a witness for respondent, examined claimant on July 12 and 13, 1938, and testified that she showed a condition of ill-being with a point in the chest sensitive to pressure which in his opinion was the result of an accidental injury.

Dr. Ford K. Hick, called by respondent, testified that he examined claimant on August 15, 1938, and found her to become easily fatigued, to have somewhat low blood pressure, a point over the left fifth rib sensitive to pressure, swelling of the legs with evidence of a hypothyroidism and evidence of what has been called a cardiac neurosis. That the latter phrase is a vague term presenting the following symptoms: Weakness and great fatigue, shortness of breath on exertion, tendency to find palpitation with rapid heart action; pain about the heart and many times a tender point somewhere in the left chest. Dr. Hick had been treating the claimant, prescribing rest and the administration of thyroidectin. In answer to a question as to what is the usual cause of hyperthyroidism, the doctor stated, "previous surgery on the thyroid gland, goitre and unknown causes, but that it was not likely to arise from trauma, except from an injury direct to the thyroid gland in the neck."

Doctors Frederick C. Test and Samuel G. Taylor differed in their conclusions in the reading of an X-ray picture of Mrs. Gemelli's chest and as to whether same disclosed any sign of a fracture.

From a consideration of the entire record herein, the court is convinced that the attempt by Mrs. Gemelli to obtain

108

an award from the State for an alleged injury on October 27, 1937, is unwarranted and without merit. The symptoms of ill-being testified to by her, as resulting from the alleged accident of October 27, 1937, follow in a remarkably close manner the symptoms and physical reactions displayed by her in the Cook County Hospital in 1932 and 1933, as they appear in her case history, as disclosed by the records of that institution. The cold hands, the tendency to readily become blue in color about the mouth, the fainting and nausea, the weakness and loss of weight to which she became subject after the occasion of October 27, 1937, and all of which she ascribes to the alleged accident of that date, were all a substantial repetition of her symptoms and reactions disclosed by her case history, as given by her six years before the alleged accident of October 27, 1937. In her examination she was asked (p. 23), "Was any of this condition that you have just described ever present before the occurrence of October 27th?" To which she replied: "No, sir; I never had a feeling like that before in my life, ever." We do not desire to comment further about the evidence, but we believe that the record would well justify an investigation concerning the testimony given by Mrs. Gemelli in an effort to obtain an award herein. Under the state of the evidence the court definitely finds that no award should be made. The claim is denied and the case dismissed.